1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

PHILLIP MOODY, a single man,

CASE NO. 20-5201 RJB

11

            Plaintiff,

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

12

        v.

13

COMMUNITY CORRECTIONS
OFFICER JUDY MCCULLOUGH,
WASHINGTON DEPARTMENT OF
CORRECTIONS, a subsidiary for the State
of Washington, the STATE OF
WASHINGTON, and DEPARTMENT OF
CORRECTIONS EMPLOYEES
JOHN/JANE DOES 1-5,

14
15
16
17

            Defendants.

18

19         This matter comes before the Court on the Defendants' motion to strike (Dkt. 40), the

20  Defendants Motion for Summary Judgment (Dkt. 23) and the Plaintiff's Motion for Summary

21  Judgment (Dkt. 21).  The Court has considered the pleadings filed in support of and in opposition

22  to the motions and the file herein.

23         Originally filed in Pierce County, Washington Superior Court, this case arises from the

24  revocation of the Plaintiff's Drug Offender Sentencing Alternative ("DOSA").  Dkt. 1.  The

Plaintiff asserts federal claims for unlawful imprisonment and malicious prosecution pursuant to 42 U.S.C. § 1983 and state law claims for unlawful imprisonment, malicious prosecution, outrage, and negligence.  Dkt. 15.

## I.     RELEVANT BACKGROUND, FACTS AND PROCEDURAL HISTORY

### A.  WASHINGTON'S DOSA

Under Washington's DOSA program, qualifying individuals who are convicted of certain offenses may be given the opportunity for alternative sentencing. RCW § 9.94A.660.  DOSA sentences are either prison-based or community-based; as is relevant here, prison-based sentences require half of the sentence be served in prison and the remaining half in a "community custody" based chemical dependency treatment program.  RCW § 9.94A.660(2). The DOSA program further provides that "[a]n offender who fails to complete the program or who is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court."  RCW § 9.94A.662(4).

### B.  FACTS

On August 27, 2015, the Plaintiff was sentenced to a prison-based DOSA sentence (36.75 months in prison and 36.75 months in community custody) after his plea of guilt to one count of identity theft in the first degree and two counts of identity theft in the second degree, in Pierce County, Washington Superior Court.  *State v. Moody*, Pierce County, Washington Superior Court case number 14-1-04510-9; Judgment and Sentence filed in the record here at Dkt. 28-1, at 46-62.  On December 15, 2015, Plaintiff was sentenced to a second prison-based DOSA sentence for the same amount of time as, and to be served concurrently with, the Pierce County sentence, after his plea of guilt to one count of residential burglary. *State v. Moody*, King County,

1    Washington Superior Court case number 15-C-00978; Judgment and Sentence filed in the record

2    here at Dkt. 28-1, at 37-45.

3        The Judgment and Sentence in the Pierce County case provided that:

4            An offender who fails to complete the special drug offender sentencing alternative
             program or who is administratively terminated from the program shall be
5            reclassified to serve the unexpired term of the sentence as ordered by the
             sentencing judge and shall be subject to all rules relating to community custody
6            and earned release time.

7    Dkt. 28-1, at 52.   Likewise, the Judgment and Sentence in the King County case provided that:

8            If the defendant fails to complete the Department [of Corrections'] special drug
             offender sentencing alternative program or is administratively terminated from the
9            program, he/she shall be reclassified by the Department to serve the balance of the
             unexpired term of sentence.   If the defendant fails to comply with the conditions
10           of supervision as defined by the Department, he/she shall be sanctioned.
             Sanctions may include reclassification by the Department to serve the balance of
11           the unexpired term of sentence.

12   Dkt. 28-1, at 40.   The Plaintiff was sent to prison.   *Id.*

13       On December 7, 2016, the Plaintiff was transferred to the Rap/Lincoln Work Education

14   Release facility ("WER") in Tacoma, Washington to begin DOSA work release and chemical

15   dependency treatment in the community.   Dkt. 25, at 2.

16       Plaintiff participated in orientation and signed the program agreement forms in which he

17   agreed to meet the program requirements.   Dkts. 25, at 2 and 28-1, at 14-17.   As is relevant here,

18   the Substance Use Disorder Treatment Participation Requirements that Plaintiff signed states that

19   "[t]he following behaviors <u>WILL</u> result in termination from the treatment program . . . an

20   infraction that results in a transfer and/or change in custody level."   Dkt. 24-2, at 15 (*emphasis in*

21   *original*).   Further, the Substance Use Disorder Prison DOSA Agreement provides, in part, that

22   he will "be required to maintain [his] current DOSA eligibility status as stated in DOC 580.655,"

23   and that "[a]fter alternatives to retain [him] in the program have been addressed," he may be

24

1   "administratively" terminated from the program "as determined and documented by the primary

2   [chemical dependency professional ("CDP")] and based on . . . any major infraction that causes a

3   change in custody level or the violation of conditions outlined in the [Substance Abuse]

4   Treatment Participation Requirements . . ." Dkt. 24-2, at 12.

5          On December 15, 2016, Plaintiff was authorized to leave the WER facility to attend a

6   community reentry meeting at the Community Justice Center. Dkt. 25, at 2. The Plaintiff

7   acknowledges that he talked to a female friend on the phone and invited her to meet him at the

8   meeting, which was public. Dkts. 24-2, at 8 and 20, and 28-1, at 81. While walking to the

9   meeting, the Plaintiff injured his ankle and felt that he could not make it down the stairs to the

10  meeting. Dkt. 24-2, at 10. The Plaintiff acknowledges that rather than calling officials at the

11  WER "he choose to wait [outside the building] for that friend instead. Then [he] was going to

12  call." Dkt. 24-2, at 8.

13         The next day, December 16, 2016, Defendant Judy McCullough, Plaintiff's assigned WER

14  community corrections officer ("CCO"), was informed that the Plaintiff did not attend the

15  community reentry meeting by another CCO, CCO Borders. Dkts. 24-1, at 4; 25, at 2. CCO

16  Borders indicated that she located the Plaintiff outside the Community Justice Center after the

17  meeting and waited with him for medical assistance to arrive. Dkt. 25, at 2. Defendant CCO

18  McCullough's supervisor, Bill Shepherd, was also told that the Plaintiff did not attend the

19  meeting. Dkt. 24-1, at 26.

20         As directed by Shepherd, Defendant CCO McCullough investigated the incident by

21  interviewing other offenders, DOC staff and by watching surveillance video of the exterior of the

22  Community Justice Center at the time of the meeting. Dkt. 25, at 2. Defendant CCO

23  McCullough learned that Plaintiff had injured his ankle and was later diagnosed with a sprained

24

1    ankle.  Dkt. 24-1, at 10.  The Plaintiff told her that he couldn't go down the stairs to the meeting

2    due to his injury.  Dkt. 24-1, at 10.  Defendant CCO McCullough observed on the video that

3    several people offered the Plaintiff help; however, he declined and chose to remain outside the

4    building instead.  Dkt. 24-1, at 11.  Through her investigation, Defendant CCO McCullough

5    noted that the Plaintiff told people "don't bother getting him medical help right now" and to not

6    inform the community corrections officer at the meeting that he was outside with an injury, that

7    he "would make it down there."  Dkt. 24-1, at 11-12.  Defendant CCO McCullough felt that not

8    only could he have made it to the meeting, he failed to communicate with the officers at the

9    meeting.  Dkt. 24-1, at 14.  She stated that on the video surveillance, it appeared to her that as he

10   sat there, he was watching each car go by like he was looking for someone.  *Id.*  At the end of the

11   meeting, a woman arrived and she and the Plaintiff hugged and kissed; the woman did not go to

12   the meeting (which was open to the public).  Dkt. 24-1, at 20.  Defendant CCO McCullough

13   admitted that she would not have recommended an infraction had the Plaintiff not attended the

14   meeting only because of his injury.  Dkt. 24-1, at 18. There is no infraction for hugging or

15   kissing someone.  *Id.*

16        On December 19, 2016, Defendant CCO McCullough presented her supervisor, Bill

17   Shepherd, with the results of her investigation.  Dkt. 25, at 2.  Defendant CCO McCullough

18   knew that her investigation could affect the Plaintiff's DOSA sentence when she presented it to

19   her supervisor.  Dkt. 24-1, at 23.  She states that she told Sheppard that the Plaintiff could have

20   attended the meeting with help from other offenders and would have received quicker medical

21   attention if he'd gone to the meeting.  Dkt. 25, at 2.  Defendant CCO McCullough further states

22   that she told Sheppard that "instead, [Plaintiff] remained outside the [Community Justice Center]

23   building, where he met with a female friend, with whom he engaged in a public display of

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 5

physical affection by hugging and kissing." Dkt. 25, at 2. She did not make a recommendation of what action Shepherd should take and had "no feelings one way or the other" about it. Dkt. 24-1, at 26.

According to CCO McCullough, Shepherd decided to find that Plaintiff committed an 813 infraction and terminated him from the WER program. Dkt. 24-1, at 21-22. For people serving a DOSA sentence, an 813 infraction is "[b]eing in the community without authorization, or being in an unauthorized location in the community." Washington Administrative Code ("WAC") 137-25-030. Defendant CCO McCullough did not have the authority to find him guilty of an infraction or terminate him from the work release program. Dkt. 24-1, at 23. Defendant COO McCullough did not know why some sort of progressive discipline wasn't used with the Plaintiff. Dkt. 24-1, at 23. She states that a person found guilty of an 813 infraction did not necessarily have to be terminated from the program and isn't sure why her boss made the decision he did. Dkt. 36-1, at 6. Plaintiff's custody level was changed and he was returned to prison on December 19, 2016. Dkt. 25, at 2.

On December 22, 2016, a "Substance Disorder Discharge Summary and Continued Care Plan" was created for the Plaintiff by Katherine Pilot, a CDP. (Pilot is not a named defendant). Dkt. 24-1, at 31. Under the heading, "Summary of Discharge Interview," it provides "D. [I]ndividual not present for exit interview. A: Chemical infraction. Positive UA." Dkt. 28-1, at 13.

A hearing was held on December 27, 2016, and the Plaintiff was found guilty of an 813 infraction and terminated from the WER program. Dkt. 27-1, at 41-42. COO McCullough provided evidence and made recommendations for sanctions, including that the Plaintiff be

1   terminated from the program and that he lose good time credits.  Dkt. 36-1.  The section of the

2   written decision titled "Summary of Facts/Reasons for Decision" provided,

3            [Plaintiff] pled not guilty . . . [Plaintiff] stated that he was injured and not able to
             make it down stairs.  COO [Mc]Cullough provided video clips of [Plaintiff's]
4            actions outside the approved meeting.  [Plaintiff] spent approximately two hours
             outside – some of that time with a female companion.  [Plaintiff] was found guilty
5            of listed allegation on #813 based on the testimony and evidence presented by
             COO [Mc]Cullough.
6
    Dkt. 27-1, at 42.  In addition to being terminated from the WER program, the Plaintiff had 30
7
    days good time revoked.  *Id.*
8
         On January 11, 2017, the Plaintiff was informed that 762 infraction allegations were being
9
    asserted against him.  Dkt. 25, at 2.  A person serving a DOSA sentence is subject to 762
10
    infraction when they are in "[n]oncomplaince with the DOSA program."  WAC 137-25-030.
11
    On January 13, 2017, he was given a written copy of the 762 infraction report and accompanying
12
    documents.  Dkt. 28-1, at 7-10.
13
         On January 18, 2017, a hearing was held on the 762 infraction allegations which was
14
    presided over by Correctional Hearings Officer Kelly Wichert.  Dkt. 28, at 1.  Defendant CCO
15
    McCullough provided about 60 pages of documents for Officer Wichert's consideration,
16
    including the "Substance Disorder Discharge Summary and Continued Care Plan" (created by
17
    CDP Pilot).  Dkts. 24-1, at 32 and 28-1, at 12-13.  Defendant CCO McCullough states that she
18
    did not realize that the form indicated that he had a positive UA.  Dkt. 24-1, at 32.  She states
19
    that, as far as she knows, the form was incorrect – the Plaintiff did not have a positive UA.  Dkt.
20
    24-1, at 32.  Defendant CCO McCullough appeared "via telephone to testify and prosecute the
21
    762 violation."  Dkt. 25, at 3.  At the 762 hearing, Defendant CCO McCullough recommended
22
    that the Plaintiff lose earned good time as a sanction for the 813 violation.  Dkt. 24-1, at 23.
23
    Based on McCullough's supervisor Shepherd's decision not to allow him to continue in the WER
24

program, CCO McCullough also recommended at the hearing that the Plaintiff be terminated

from the DOSA program. Dkt. 24-1, at 23-24. The Plaintiff attended the hearing. Dkt. 28-1, at

74-86. He plead guilty to the infraction at the hearing, acknowledged that the event occurred,

discussed his injury and decision to meet his friend; he stated that he "wasn't wanting to lie to

[Defendant CCO] McCullough, but [he] freaked out and went right back to [his] old habits self.

The choice [he] made [was] stupid." Dkt. 28-1, at 2; 74-76. Defendant CCO McCullough did

not testify about whether the Plaintiff had a positive UA.

That same day, on January 18, 2017, Correctional Hearings Officer Wichert issued her

decision, finding that the Plaintiff was guilty of the 762 infraction. Dkt. 28-1, at 2-3. The

Plaintiff's DOSA sentence was revoked as a sanction. *Id.,* at 3. Correctional Hearings Officer

Wichert explained at the hearing that due to the 813 infraction, she didn't have flexibility to keep

Plaintiff in the DOSA program based on a directive from the DOC. Dkt. 28-1, at 85 and 89-90;

93-94. Her decision did not mention the report regarding the positive UA. *Id.*

Plaintiff appealed the 762 violation ruling (see Dkts. 24-2, at 16) and his case was remanded.

Dkt. 25, at 3. In this first appeal, the Plaintiff acknowledges that "I met a girl at a reentry

meeting. I wasn't suppost [sic] to and I agree with the loss of 30 days good time. Was at the

address . . . I did choose to wait outside in the freezing cold to see a friend that didn't even show

up until after the meeting. I haven't had a hug from anyone in 3 years." Dkt. 24-2, at 17. His

appeal was denied.

On July 26, 2018, the Washington Supreme Court decided *In re Schley,* 191 Wn.2d 278, 289

(2018). In *In re Schley,* a prisoner petitioned for the reinstatement of his DOSA sentence. *Id.*

While serving the community custody portion of his sentence, he was infracted after a hearing

for engaging in a physical altercation. *Id.* Like the Plaintiff here, Schley's infraction resulted in

termination of his treatment, a change in his custody level, and he was sent back to prison. *Id.* As was the case here, after Schley arrived in prison, a hearing to determine whether his DOSA sentence should also be terminated was held. *Id.* At that time, the DOC's policy was that the underlying grounds for the infraction (the physical altercation) did not need to be proven by a preponderance of the evidence at the DOSA termination hearing. *Id.* Schley challenged this policy (which was also in place at the time of the Plaintiff's DOSA termination hearing here). *Id.* The Court held that "[i]n order to effectuate the due process protections at the revocation hearing, the Department must prove the facts underlying the treatment termination hearing by a preponderance of the evidence." *In re Schley*, 191 Wn.2d 278, 289 (2018).

As a consequence of *In re Schley,* the revocation of the Plaintiff's DOSA was remanded for review. Dkt. 29, at 2. Several other revocations were remanded for review as well. *Id.*

On January 23, 2019 the second remand hearing was held. Dkt. 27-1, at 2. Defendant CCO McCullough appeared to again testify and prosecute the 762 infraction (based on the 813 infraction). Dkt. 25, at 3. The decision to find that the Plaintiff was guilty of a 762 infraction was overturned. Dkt. 27-1, at 1-5. The reason given for the decision was that the "CD Discharge Summary in packet dated 12/20/18 is only info regarding termination from treatment. Not done by a couns [sic] who was familiar w/p – and reason for termination was listed as dirty UA that resulted in termination – this was wrong (conf. by CCO McCullough)." Dkt. 27-1, at 5. Defendant CCO McCullough testified at this second remand hearing that Plaintiff was not terminated from work release for a positive UA. Dkt. 27-1, at 98. The Plaintiff's DOSA sentence was reinstated. Dkt. 127-1, at 133.

**C.  PENDING MOTIONS**

    1.  <u>Defendants' Motion for Summary Judgment and Motion to Strike</u>

1    The Defendants move for summary judgment arguing that the Plaintiff's § 1983 claims

2   asserted Washington State, the Department of Corrections, and the individual employees in their

3   official capacities should be dismissed because these Defendants do not constitute "persons."

4   Dkt. 23.  They assert that the false imprisonment claim brought under § 1983 against Defendant

5   COO McCullough should be dismissed because it is not cognizable.  Further, they argue that the

6   malicious prosecution claim brought under § 1983 against Defendant COO McCullough should

7   be dismissed because she had probable cause to bring and prosecute (to the extent she can be

8   said to have done so) the infractions and make recommendations regarding the sanctions and the

9   Plaintiff cannot point to any evidence of malice, the second 762 proceedings arguably did not

10  terminate in his favor, and he cannot show that the revocation was sought with the intent to deny

11  him a constitutional right.  *Id.*  The Defendants also assert that COO McCullough is entitled to

12  qualified immunity and immunity as a prosecutor and witness.  *Id.*  The Defendants maintain that

13  the state claims for false imprisonment and malicious prosecution should be dismissed because

14  COO McCullough had probable cause; that Plaintiff cannot point to sufficient evidence for his

15  outrage or negligence claims, and that she is entitled to immunity under state law as well.  *Id.*

16  The Defendants also argue that the claims against Washington should be dismissed because the

17  Plaintiff failed to properly exhaust his claims.  *Id.*

18    The Plaintiff concedes that the § 1983 claims asserted against the Washington State, the

19  Department of Corrections, and the individual employees in their official capacities should be

20  dismissed.  Dkt. 35. The Plaintiff maintains that his federal claims against CCO McCullough

21  should not be dismissed because she lacked probable cause, there is sufficient evidence of malice

22  or recklessness, the proceedings terminated in his favor, and he was denied his Fourth

23  Amendment rights.  *Id.* He asserts that he can bring a false imprisonment claim under § 1983.

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 10

1   *Id.* The Plaintiff argues that Defendant COO McCullough is not entitled to federal or state

2   immunity. *Id.* He asserts that his state law claims should not be dismissed.  *Id.*  The Plaintiff

3   asserts that he exhausted his administrative remedies before filing any claims against the state of

4   Washington and did not have to exhaust before filing his case against Defendant COO

5   McCullough.  *Id.*  The Plaintiff also argues that the state law claims asserted against Defendant

6   COO McCullough are now moot because he has pending (although not yet ripe) a motion to

7   dismiss those claims without prejudice,  amend his complaint, and remove all state law claims

8   asserted against her.  *Id.*

9       The Defendants filed a reply (Dkt. 40) and they move to strike the Declaration of Kautzky

10  (Dkt. 37).  The motion for summary judgment and motion to strike are ripe for review.

11          2.  <u>Plaintiff's Motion for Summary Judgment</u>

12      The Plaintiff also moves for summary judgement, arguing that collateral estoppel establishes

13  that the Defendants acted unlawfully when they revoked the Plaintiff's DOSA sentence and that

14  there are no issues of fact as to his false imprisonment claim under § 1983 against Defendant

15  COO McCullough, his state law false imprisonment claim, and his state law claim for

16  negligence.  Dkt. 21.

17      The Defendants argue that the Plaintiff's motion for summary judgment regarding his state

18  and federal false imprisonment claim should be denied because there was probable cause for his

19  813 infraction and termination from work release.  Dkt. 38.  The Defendants argue that

20  Plaintiff's collateral estoppel argument does not apply to the decision to infract him for an 813

21  violation or to terminate him from work release.  *Id.* They argue that the Plaintiff's claim for

22  negligence fails because he cannot establish a duty owed to him that was violated.  *Id.*  Further

23

24

1   they maintain that COO McCullough and the State are entitled to immunity under both federal

2   and state law.  *Id*.

3       The Plaintiff filed a reply (Dkt. 39) and the motion is ripe for review.

4   **D.  ORGANIZATION OF OPINION**

5       This opinion will first provide the summary judgment standard, then address the motion to

6   strike, and then the cross motions for summary judgment on the federal claims and defenses to

7   those claims.  Next, the opinion will order that the parties show cause, if any they have, why this

8   Court should not decline to exercise supplemental jurisdiction over the remaining state law

9   claims and remand this case to Pierce County, Washington Superior Court.

10                  **II.      DISCUSSION**

11  **A.  SUMMARY JUDGMENT STANDARD**

12          Summary judgment is proper only if the pleadings, the discovery and disclosure materials

13  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

14  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a). The moving party is

15  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

16  showing on an essential element of a claim in the case on which the nonmoving party has the

17  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

18  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

19  for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

20  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

21  metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

22  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

23  the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);

24

1  *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.

2  1987).

3          The determination of the existence of a material fact is often a close question.  The court

4  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

5  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

6  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

7  of the nonmoving party only when the facts specifically attested by that party contradict facts

8  specifically attested by the moving party.  The nonmoving party may not merely state that it will

9  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

10  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

11  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

12  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

13          **B.  DEFENDANTS' MOTION TO STRIKE KAUTZKY DECLARATION**

14      In their reply, the Defendants move to strike the Declaration of Walter Kautzky (Dkt. 37) in

15  its entirety.  Dkt. 40.  The Plaintiff offered Kautzky's opinions as expert testimony on whether

16  Washington Department of Corrections demonstrated the "generally accepted standard of care"

17  in its treatment of the Plaintiff.  Dkt. 37.

18      The Defendants' motion to strike (Dkt. 40) should be denied without prejudice.  While the

19  declaration was of limited use for purposes of the pending motions, it is unclear whether it would

20  be properly admitted at a later stage.

21          **C.  CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY**

22          In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

23  conduct complained of was committed by a person acting under color of state law, and that (2)

24

1  the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

2  laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

3  *grounds, Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to

4  remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769

5  F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

6       In order to state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific

7  factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089,

8  1092 (9th Cir. 1980).  Vague and conclusory allegations of official participation in a civil rights

9  violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d

10  266 (9th Cir. 1982).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the

11  basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*,

12  436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

13  **D.  FEDERAL CLAIMS ASSERTED AGAINST THE STATE OR DOC PURSUANT TO § 1983**

14       Neither states nor state officials acting in their official capacities are persons for purposes

15  of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 48, 71 (1989).  As

16  conceded by the Plaintiff in his response (Dkt. 35), because they are not persons within the

17  meaning of § 1983, Plaintiff's § 1983 claims against the State, DOC, or any of the named

18  individuals acting in their official capacities, should be dismissed.

19  **E.  FEDERAL CLAIMS ASSERTED AGAINST McCULLOUGH AND QUALIFIED IMMUNITY**

20

21       Defendants in a Section 1983 action are entitled to qualified immunity from damages for

22  civil liability if their conduct does not violate clearly established statutory or constitutional rights

23  of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815

24

1  (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances

2  two important interests: the need to hold public officials accountable when they exercise power

3  irresponsibly and the need to shield officials from harassment, distraction, and liability when

4  they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of

5  qualified immunity generally turns on the objective reasonableness of the actions, without regard

6  to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable

7  officer could have believed his or her conduct was proper is a question of law for the court and

8  should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*,

9  988 F.2d 868, 872-73 (9th Cir. 1993).

10      In analyzing a qualified immunity defense, the Court must determine: (1) whether a

11  constitutional right would have been violated on the facts alleged, taken in the light most

12  favorable to the party asserting the injury; and (2) whether the right was clearly established when

13  viewed in the specific context of the case.  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  While

14  the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as

15  mandatory. *Pearson v. Callahan*, at 129 S.Ct at 811. "The judges of ... the courts of appeals

16  should be permitted to exercise their sound discretion in deciding which of the two prongs of the

17  qualified immunity analysis should be addressed first in light of the circumstances in the

18  particular case at hand." *Id*.

19      The privilege of qualified immunity is an immunity from suit rather than a mere defense

20  to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to

21  go to trial.  *Saucier*, at 2156.

22      1.  Violation of a Constitutional Right

23

24

1    The Plaintiff asserts claims under § 1983 for false imprisonment and for malicious

2    prosecution against COO McCullough

3         a.  *False Imprisonment under § 1983*

4         The Plaintiff fails to point to any authority that a claim for false imprisonment in these

5    circumstances is cognizable under § 1983 as against Defendant COO McCullough.  His reliance

6    solely on the elements of false imprisonment and sweeping reference to the "Defendants"

7    generally demonstrates the central problem with this theory of recovery against her here.

8    Liability under § 1983 is only for violations of the federal constitutional or statutory rights.

9    Under Washington law, "to establish false imprisonment, the plaintiff must show [Defendant

10   COO McCullough] acted without lawful authority and imprisonment was not enacted pursuant to

11   a valid legal process." *Stephens v. State*, 186 Wn. App. 553, 558 (2015).  A federal right is not

12   necessarily implicated here.  Further, the Plaintiff's repeated reference to the general actions of

13   the "Defendants" is unhelpful.  Defendant COO McCullough is potentially liable under § 1983

14   only for her own conduct.  *Aldabe,* at 1092 (noting that a § 1983 plaintiff must set forth the

15   specific factual bases upon which he claims each defendant is liable).

16        Moreover, the evidence in the record does not support this false imprisonment claim as to

17   COO McCullough.  To the extent that the Plaintiff argues that COO McCullough falsely

18   imprisoned him between the time he was sent back to prison but before his 813 infraction

19   hearing, his false imprisonment claim against CCO McCullough fails.  The Plaintiff fails to point

20   to any evidence in the record that it was COO McCullough, rather than Bill Shepherd, that

21   decided to send him back to prison before his 813 hearing.  Further, the Plaintiff's assertion, that

22   collateral estoppel requires a finding that the revocation of his DOSA sentence was unlawful, is

23   unhelpful as to his § 1983 claim for false imprisonment against COO McCullough.  The Plaintiff

24

1    fails to show that collateral estoppel applies to the events occurring before the first 762

2    revocation hearing.  To the extent that the Plaintiff bases his false imprisonment claim on

3    Defendant COO McCullough's actions at or after the 813 hearing, the claim should be reviewed

4    as a malicious prosecution claim.

5           *b.  Malicious Prosecution under § 1983*

6           The Plaintiff also makes a claim for malicious prosecution pursuant to § 1983.

7    Generally, "a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process

8    is available within the state judicial system to provide a remedy." *Bretz v. Kelman,* 773 F.2d

9    1026, 1031 (9th Cir. 1985). An exception applies, however, and that is where prosecution was

10   undertaken for the purpose of denying a constitutional right.  *Awabdy v. City of Adelanto*, 368

11   F.3d 1062, 1066 (9th Cir. 2004). "In order to prevail on a § 1983 claim of malicious prosecution,

12   a plaintiff 'must show that the defendants prosecuted him with malice and without probable

13   cause, and that they did so for the purpose of denying him equal protection or another specific

14   constitutional right.'" *Id.* (*quoting Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th

15   Cir.1995)). Federal courts rely on state common law for elements of malicious prosecution.

16   *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019), *cert. denied sub nom. Mills v. City*

17   *of Covina, California*, 140 S. Ct. 388 (2019).  To prevail on a claim for malicious prosecution in

18   Washington, a plaintiff must show that:

19          (1) the prosecution was instituted or continued by the defendant, (2) there was
            want of probable cause for the institution or continuation of the proceeding, (3)
20          the proceeding was instituted or continued through malice, (4) the proceeding was
            terminated on the merits in favor of the plaintiff or was abandoned, and (5)
21          plaintiff suffered injury as a result of the prosecution.

22   *Bender v. City of Seattle*, 99 Wash.2d 582, 593 (1983); *Youker v. Douglas County*, 162 Wn. App.

23   448, 461 (2011).  Accordingly, in addition to having to make a showing on those five elements, a

24

1  Washington plaintiff bringing a § 1983 claim of malicious prosecution must show that the

2  defendants prosecuted him for the "purpose of denying him equal protection or another specific

3  constitutional right.'" *Awabdy,* at 1066.

4  The Plaintiff fails to point to issues of fact as to whether CCO McCullough instituted or

5  continued the proceedings through malice and fails to show that that CCO McCullough

6  prosecuted him for the purpose of denying him a specific constitutional right.

7                          i.   *Malice*

8  "Malice may be inferred from lack of probable cause and from proof that the

9  investigation or prosecution was undertaken with improper motives or reckless disregard for the

10  plaintiff's rights." *Youker,* at 464. "[M]alice may not be inferred from the lack of probable cause

11  alone; for the inference of malice to be justified, the plaintiff must also demonstrate affirmative

12  acts disclosing at least some feeling of bitterness, animosity or vindictiveness towards the

13  [plaintiff]." *Id.* (*internal quotation marks and citations omitted*). "The reckless disregard that

14  can support an inference of malice requires proof of bad faith." *Id.*

15  The Plaintiff has failed to point to any evidence that CCO McCullough acted with malice.

16  This opinion makes no finding on whether or not CCO McCullough had probable cause to

17  charge and/or to the extent she can be said to, prosecute, the 813 (unauthorized presence in the

18  community) or 762 (failure to complete DOSA) infractions. The Plaintiff has failed to point to

19  any evidence that she had some "feelings of bitterness, animosity or vindictiveness toward the

20  plaintiff." He failed to show that she acted in bad faith when she charged and prosecuted the

21  Plaintiff for these infractions or that her recommended sanctions were improperly motivated.

22  The Plaintiff argues that under DOC policies progressive discipline is used and that Defendant

23  McCullough "could not defend" the decision to send the Plaintiff back to prison before his 813

24

1   hearing.  The Plaintiff does not acknowledge that COO McCullough did not have the authority to

2   determine what discipline was given and did not order the Plaintiff back to prison before his

3   hearing.  There is no evidence that COO McCullough harbored ill will against the Plaintiff, acted

4   in bad faith, or that she instituted or continued the proceedings for an improper purpose.  He has

5   failed to point to evidence supporting this element.

6              ii.      *With Purpose of Denying him Equal Protection or other*
                    *Constitutional Right*

7       In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that

8   the defendant maliciously prosecuted him and "that they did so for the purpose of denying him

9   equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d

10  1062, 1066 (9th Cir. 2004).

11      The Plaintiff has failed to point to any evidence that CCO McCullough acted with the

12  purpose of denying him his constitutional right to equal protection or other constitutional right.

13  The Plaintiff fails to point to any evidence that McCullough acted with the purpose of denying

14  him his constitutional rights under the Fourth Amendment.  The Plaintiff's position, that COO

15  McCullough's malicious prosecution resulted in his loss of liberty is not sufficient.

16      2.  <u>Clearly Established</u>

17      Moreover, even if the Plaintiff had shown that COO McCullough violated his rights, she

18  is entitled to qualified immunity.

19      The relevant dispositive inquiry in determining whether a right is clearly established is

20  whether it would be clear to a reasonable official that their conduct was unlawful in the situation

21  they confronted. *Saucier,* at 2156.  "Law is 'clearly established' for the purposes of qualified

22  immunity if every reasonable official would have understood that what he is doing violates the

23  right at issue." *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020)(*internal quotation marks and*

1    *citation omitted*).  The Supreme Court has repeatedly advised courts considering questions of

2    qualified immunity to not "define the right at issue at a high level of generality."  *Orn v. City of*

3    *Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020)(*citing Kisela v. Hughes*, 138 S. Ct. 1148, 1152

4    (2018)).  However, "[o]fficials can still be on notice that their conduct violates established law

5    even in novel factual circumstances—i.e., even without a prior case that had fundamentally

6    similar or materially similar facts."  *Wilk*, at 1148 (*internal quotation marks and citation*

7    *omitted*).

8           The Plaintiff has failed to show that "every reasonable official would have understood"

9    that what COO McCullough did violated the right at issue.  *Wilk,* 1148. He has not shown that

10   "at the time of the alleged act or failure to act, there was clearly established law that defined the

11   contours of the federal right objectively putting [COO McCullough] on notice."  *City of*

12   *Escondido v. Emmons,* 139 S. Ct. 500, 503 (2019).  The Defendant COO McCullough is entitled

13   to qualified immunity against the Plaintiff's federal claims.

14          3.   Conclusion and Other Grounds for Immunity from Federal Claims

15          The Plaintiff has failed to point to sufficient issues of fact precluding summary judgment as

16   to his federal claims against Defendant COO McCullough.  He has failed to show that she

17   violated his rights.  Further, even if she had, COO McCullough is entitled to qualified immunity

18   as to those claims.  The Court need not reach COO McCullough's remaining claims of immunity

19   from the federal claims.  The Defendants' motion for summary judgment (Dkt. 23) as to the

20   federal claims should be granted.  The Plaintiff's motion for summary judgment (Dkt. 21) as to

21   his federal claims should be denied.  The federal claims should be dismissed with prejudice.

22   **F.  STATE CLAIMS AND SUPPLEMENTAL JURISDICTION**

23

24

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Here, two of the four conditions in § 1367(c) are present.  As above, all of Plaintiff's federal claims have been dismissed in this order granting defendants' motion for summary judgment. Accordingly, this Court has "dismissed all claims over which it has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over the state law claims under § 1367(c)(3).  Moreover, the remaining state claims "raise novel or complex issues of state law" under § 1367(c)(1), determinations for which the state court is uniquely suited.

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the parties should be given an opportunity to be heard on whether the case should be remanded to Pierce County Superior Court.  Parties should be ordered to show cause why the Court should not decline to exercise supplemental jurisdiction and remand the case.  Parties' briefs, if any, are due **April 22, 2021**. Parties' briefs should not exceed three pages. Consideration of the parties' responses to the Order to Show Cause will be noted for **April 23, 2021**. If the Court decides to decline jurisdiction, the

portions of Defendants' Motion for Summary Judgment (Dkt. 23) and the Plaintiff's Motion for Summary Judgment (Dkt. 21), which are based entirely on state law, will be denied without prejudice, but may be renoted in the state court.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendants move to strike the Declaration of Walter Kautzky (Dkt. 40) **IS DENIED WITHOUT PREJUDICE.**

- The Defendants' motion for summary judgment (Dkt. 23) **IS GRANTED** as to the federal claims only;

- The Plaintiff's motion for summary judgment (Dkt. 21) **IS DENIED** as to his federal claims only;

- The Plaintiff's federal claims **ARE DISMISSED WITH PREJUDICE**;

- The parties **ARE ORDERED TO SHOW CAUSE**, in writing, if any they can, why the Court should not decline to exercise supplemental jurisdiction and remand the case to Pierce County Washington Superior Court. Parties' briefs, if any, are due **April 22, 2021**. Parties' briefs should not exceed three pages; and

- Consideration of the parties' responses to the Order to Show Cause will be noted for **April 23, 2021**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 12th day of April, 2021.

ROBERT J. BRYAN
United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 22